FILED
2025 Jul-02  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHNNY M. BUSH, Jr.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.: 1:25-cv-00893-RDP** |
| **HONDA DEVELOPMENT &** | } | |
| **MANUFACTURING OF AMERICA** | } | |
| **LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the court on Defendant's Partial Motion to Dismiss and Motion for a More Definite Statement. (Doc. # 16). The Motion has been fully briefed and is ripe for a decision. (Docs. # 16, 23, 27). For the reasons discussed below, the Motion (Doc. # 16) is due to be granted in part. The court will require Plaintiff to replead his class claims consistent with the directions in this opinion and order.

In October 2024, Plaintiff filed a complaint in the Southern District of Ohio alleging that Honda Development & Manufacturing of America, LLC ("Defendant") has "engaged in a systemic pattern and practice of racial discrimination in employment opportunities" that violates Title VII of the Civil Rights Act and 42 U.S.C. § 1981. (Doc. # 1 ¶¶ 1-2). Specifically, Plaintiff alleges that he and the putative class members did not have the opportunity to apply for certain jobs or promotions, were discouraged from applying, or applied and did not receive such positions while working for Defendant. (Doc. # 1). Defendant filed a Partial Motion to Dismiss and Motion for a

More Definite Statement (Doc. # 16) and a Motion to Change Venue (Doc. # 17). On June 9, 2025, the Southern District of Ohio granted the Motion to Change Venue (Doc. # 17) and transferred the case here under 28 U.S.C. § 1404(a). (*See* Doc. # 32).

Defendant's Partial Motion to Dismiss and Motion for a More Definite Statement (Doc. # 16) is still pending and is now before this court. In the Motion (Doc. # 16), Defendant raises issues about the Rule 23 class action requirements of ascertainability, commonality, typicality, adequacy, predominance, and superiority. (*Id.* at 6-17). Defendant also asserts that the complaint is an impermissible shotgun pleading. (*Id.* at 17-20).

*Regarding ascertainability*, Defendant contends that Plaintiff's proposed class would include "every former and current exempt African American employee and contractor without regard to how, why, or whether [Defendant's] policies actually injured them." (*Id.* at 6). Plaintiff's response is that the members of the proposed class "are easily 'ascertainable' [] from the company's business records which show who applied for the positions or training at issue, or were considered or in the line of progression for such positions or training, or were otherwise in the positions or departments that were subject to the policies and practices at issue." (Doc. # 23 at 15). This response is unavailing. The complaint alleges that putative class members did not apply for certain positions because these positions were not properly posted, the class members did not know of the vacancies, and they did not hear about the positions through word of mouth. (*See* Doc. # 1 ¶ 22). Although business records might indicate who applied for and did not receive a position, they would not reveal the class members who did not see positions that were not properly posted, did not know about the vacancies, or did not hear about the positions through word of mouth. The

complaint as currently pleaded therefore does not help the court understand how Defendant's business records would assist in ascertaining who was injured in this way.

*Regarding commonality*, Defendant contends that the complaint describes discretionary decisions by individual managers. (Doc. # 16 at 7-12). Defendant argues that these discretionary decisions resemble those in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, the Supreme Court wrote:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," [*General Telephone Co. of Southwest v.*] *Falcon*, [457 U.S. 147,] 157[ 1982]. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways – by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

564 U.S. at 349-50. The Court concluded in that case that there were not common questions presented that were appropriate for Rule 23 certification. As the court noted:

> What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* at 350 (citation removed) (emphasis in original). Plaintiff responds that the injunctive and declaratory relief sought would apply generally to the class and that his complaint asserts that common employment practices of Defendant injured class members in different ways. These

common employment practices include requiring prior experience, using word-of-mouth practice for communicating job openings, and considering criteria such as department-based and performance-ratings criteria. (Doc. # 23 at 4-9).

Plaintiff seeks to distinguish *Dukes* by contending that, unlike in the instant case, the Court in *Dukes* had the benefit of a fully developed evidentiary record (*id.* at 3-4), and that in *Dukes* the decisions were made by lower-level employees. (*Id.* at 11-12). Nevertheless, the court agrees with Defendant that the complaint, as currently drafted, prompts substantial questions about whether Plaintiff can show Rule 23(a)(2) commonality. This is because the practices Plaintiff complains of include the subjective evaluation of criteria and a variety of different interactions and processes related to job openings. Plaintiff's current allegations bring to mind the Supreme Court's warning that "[w]ithout some glue holding the alleged *reasons* for all [employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Dukes*, 564 U.S. at 352 (emphasis in original). The injuries Plaintiff pleads span a full range of different claims (for example, being discouraged from applying for a job, applying for a job and not getting it, or not being told about an opportunity). These separate theories each present broadly different factual scenarios.

Plaintiff contends that an evidentiary record is needed and that *Dukes* requires a "rigorous analysis" of the Rule 23(a) requirements. To be sure, *Dukes* was appealed after the parties had conducted discovery and the district court had held a class certification hearing on an evidentiary record. But, that does not preclude review of whether a plaintiff's class allegations are sufficient. Both Rule 23(d)(1)(D) and Rule 12(e) provide authority for raising as a threshold issue a motion

4

to strike and require a more definite statement of class allegations.[1] Courts in other circuits have held that a court *should* strike class allegations from a complaint if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23." *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010). So, if a court is convinced that there are no circumstances in which Plaintiff's allegations could succeed in class action form, it is not necessary to engage in discovery before striking these class allegations. Indeed, a seminal pleadings case, *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), was a class action that the Court held must be dismissed prior to discovery due to a failure to state a claim. *Id.* at 570. In *Twombly*, the Supreme Court emphasized that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed [to discovery]." *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). Under some circumstances it is appropriate to consider, even as early as the pleadings stage, whether maintenance of a class action is appropriate under Rule 23(a)(2). Plaintiff's argument to the contrary ignores a practical problem: this court has some responsibility to ensure there are valid class allegations presented before requiring the parties to embark on time-consuming and expensive Rule 23 discovery and motion practice.

*Regarding typicality*, Defendant contends that Plaintiff's claims "face unique defenses specific to him," such as whether the subjective evaluations he claims affected him were based on legitimate employment criteria or were pretextual. (Doc. # 16 at 13). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical

---

[1] Some courts have also allowed a motion to strike class allegations to be raised under Rule 12(f). *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014).

under Rule 23(a)(3)." *Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006). Plaintiff raises class allegations regarding departments and locations in which he never worked, jobs he never held, supervisory chains of command he never reported to, and (even more generally) fact situations he was never associated with. In short, Plaintiff's allegations could be read to indicate that the class members he seeks to represent have not experienced the same challenges he has (or, on the flip side, have experienced challenges he has not). Plaintiff has not specifically responded to this typicality concern. (*See* Doc. # 23). Given the concerns presented about commonality as well as the unique circumstances of Plaintiff's individual claims, the court agrees with Defendant that the complaint appears to present typicality issues.

*Regarding adequacy*, Defendant contends that Plaintiff, a high-level supervisor, holds conflicting interests with those putative class members who are non-supervisory persons. Indeed, Defendant notes that many (perhaps most) of the class members are not supervisors, including those he currently supervises or has supervised in the past. (Doc. # 16 at 14). Plaintiff responds that the complaint contains no allegations showing that he would have a conflict of interest with class members. (Doc. # 23 at 15). The court agrees with Defendant that there are thorny questions about whether Plaintiff is an adequate representative for the class as alleged and defined. This is because while Plaintiff is responsible "for supervising and managing various subordinate employees" (Doc. # 1 ¶ 14), the class definition includes "employees . . . who . . . seek supervisory, managerial, [or] administrative" positions. (*Id.* ¶ 53). These not-yet supervisors, managers, and

administrators could still be in the position of lower-level employee and thus, under the supervision of Plaintiff – or someone like him.

Defendant also contends that independent contractors cannot bring Title VII claims (while an employee such as Plaintiff can), so including contractors in the class definition makes Plaintiff an inadequate representative for that portion of the class. (Doc. # 16 at 15). Plaintiff responds that the type of contractor included in the class definition is such that they were so controlled by Defendant that they fall under Title VII. (Doc. # 23 at 18). The court concludes that because the complaint does not specify what type of contractors are included in the class definition, it is not clear that such contractors could bring the same type of Title VII claim as Plaintiff can, making Plaintiff an inadequate representative for those class members. (The court notes that, as currently pleaded, this inclusion of independent contractors may also present difficult problems of commonality and typicality).

*Regarding predominance*, Defendant contends that the lack of commonality indicates a lack of predominance, especially because Plaintiff also seeks individualized monetary damages that would require an individual analysis. (Doc. # 16 at 16-17). Plaintiff responds that the liability stage of the trial will focus solely on the common questions of Defendant's employment practices, and that the individualized relief would be considered at a remedial stage. (Doc. # 23 at 12-15). Defendant argues that Sixth Circuit caselaw clarified that following *Dukes* class certification is inappropriate if a class complaint seeks individual monetary damages, and that the "only potential carve out *Dukes* recognized" for awarding such monetary relief is when the "monetary relief is incidental to declaratory or injunctive relief." (Doc. # 27 at 14). The court agrees with Defendant that *Dukes* acknowledged "serious doubt about whether claims for monetary relief may be certified

under [Rule 23(b)(2)]" and held that the only potential exception was where monetary relief was "incidental to the injunctive or declaratory relief." *Dukes*, 564 U.S. at 360. That exception is not applicable here. Plaintiff's complaint seeks the damages of "back pay; front pay; lost job benefits; [and] preferential rights to jobs" (*see* Doc. # 1 ¶ 74(i)), which are not incidental to injunctive or declaratory relief, but instead must be determined on an individualized basis. Therefore, based on the currently pleaded allegations, predominance is likely not met.

*Finally, regarding the form of the complaint*, the court agrees with Defendant that the complaint is a shotgun pleading. In the Eleventh Circuit, there are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts"; 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

In addition to the problems regarding the Rule 23 elements, Plaintiff's complaint also fits the second shotgun pleading category because it adopts all preceding factual counts, including those that are immaterial to that particular cause of action (*see* Doc. # 1 ¶¶ 58, 63), and by asserting vague or conclusory allegations. These vague or conclusory allegations include the allegations that "'word-of-mouth' information disproportionately excluded or disadvantaged African American employees from knowing about and competing for positions and training" (*id.* ¶ 22), "Caucasian and non-African American employees and associates on the same or similar career path as the Plaintiff have been promoted at a faster pace to a higher-level position[] despite Plaintiff's greater

qualifications, leadership skills and technical contributions" (*id.* ¶ 24), "[Defendant's] racial history, reputation and discriminatory practices challenged in this Complaint discouraged and deterred the Plaintiff and putative class members from further pursuing additional vacancies and job opportunities" (*id.* ¶ 34), "departmental and plant-based selection criteria and/or restrictions [] favored employees in departments and/or facilities or locations that were disproportionately Caucasian and/or non-African American" (*id.* ¶ 36), "[Defendant's] recruitment and selection process perpetuated past and existing racial disparities in the jobs at issue" (*id.* ¶ 43), and "Plaintiff also has personal knowledge of the discriminatory obstacles and disparate impact experienced by other members of the putative class." (*Id.* ¶ 46).

For these reasons, and after careful review, the court agrees with Defendant that Plaintiff's complaint, as currently drafted, is a shotgun pleading and must be repleaded. And, consistent with the discussion above, an additional reason for repleading is that Plaintiff has pleaded class injuries stemming from individual employment decisions. Thus, as in *Dukes*, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Dukes*, 564 U.S. at 352 (emphasis in original). The court believes that the best approach is to permit Plaintiff to cure these deficiencies. The court adds the following warning: this opportunity to replead does not mean that the court believes that a class action is an appropriate vehicle for Plaintiff's legal theories. That question is still to be determined. The amended complaint should only include class action allegations that Plaintiff has a good faith basis for believing are supported by Supreme Court and Eleventh Circuit case law.

9

For all these reasons, Defendant's Motion (Doc. # 16) is **GRANTED IN PART**. Accordingly, on or before **July 29, 2025**, Plaintiff **SHALL** file an amended complaint that remedies the concerns laid out above.

**DONE** and **ORDERED** this July 2, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE